IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ALEXA LOWE, LLC, | ) |
| | ) |
|     Plaintiff, | )    Civil Action No. 5:20-cv-00054 |
| | ) |
| v. | ) |
| | )    By: Elizabeth K. Dillon |
| JOHN ETHERIDGE, *et al.*, | )        United States District Judge |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION**

The claims in this case stem from significant injuries sustained by a show horse named Elton as the result of an vehicular accident. Elton, who was owned by plaintiff Alexa Lowe, LLC, was injured while being transported in a trailer being pulled by a truck driver employed by defendant DMS Equine Transport LLC (DMS), an equine transport company. The accident occurred when defendant Etheridge, driving a separate vehicle, violently rear-ended the trailer. Ultimately, Elton had to be euthanized as a result of his injuries.

Pending before the court is a motion for default judgment brought by Alexa Lowe, LLC against defendant DMS. (Dkt. No. 100.) The time for responding has passed, and no response has been filed by DMS. For the reasons set forth herein, the motion for default judgment will be GRANTED, and judgment will be entered in favor of Alexa Lowe, LLC and against defendant DMS.

I.  BACKGROUND

The complaint in this case has gone through several iterations, but the operative complaint currently is plaintiff's Fourth Amended Complaint (the complaint). (Dkt. No. 95.) In that complaint, Alexa Lowe, LLC explains that it purchased Elton, a valuable show horse from

Belgium, in 2017.  (4th Am. Compl. ¶ 11, Dkt. No. 95.)  Based on a number of factors, including high placements in horse shows, Elton's market value had increased greatly by the time of the August 2018 accident.

Defendant DMS is an "equine transport company" organized under the laws of Michigan. Its principal place of business is in Michigan, and all of its members/owners are citizens of Michigan.  DMS regularly conducts business in the Commonwealth.  (*Id.* ¶ 8.)

Defendant Equo, LLC is an equine transportation broker that arranges transport of horses throughout the U.S. and Canada by partnering with equine carriers, including DMS.[1]  Equo's CEO is Steve Bluman.  (*Id.* ¶ 9.)

In August 2018, Alexa Lowe, LLC, via its sole member and owner, Ms. Alexa Lowe, contacted Bluman to arrange for the transportation of two horses from Virginia to the Kentucky Classic Horse Show in Lexington, Kentucky.  Bluman recommended DMS as a safe and competent equine carrier, and he also told Ms. Lowe that DMS carried "$2 million in insurance coverage" for the horses they transport.  (*Id.* ¶ 16.)

Before authorizing Equo to book DMS to transport her horses, Ms. Lowe researched DMS.  She specifically relied upon DMS's advertising via videos and written word "that they provided safe transport of horses and maintained superior insurance coverage."  (*Id.* ¶ 71.) However, DMS misrepresented their insurance coverage.  In fact, at the time Alexa Lowe, LLC engaged DMS, DMS had no policies in force that covered injuries or damage to horses it was transporting for their owners.  (*Id.* ¶¶ 73–75.)  Relying on both Bluman's representations and the statements made by DMS in its advertising found by Ms. Lowe, Alexa Lowe, LLC agreed to the

---

[1] Alexa Lowe, LLC reached a settlement with Defendants Equo and Etheridge.  Another party named in prior versions of the complaint, JTF Leasing, LLC was not named as a defendant in the most recent complaint. All other defendants have been dismissed from this action, as have Equo's cross-claims against Etheridge and DMS.

transport by DMS and agreed to allow DMS to take the two horses to and from the Lexington horse show.

DMS transported those two horses to the show without incident. Elton and three other horses were transported to Lexington separately by Alexa Lowe, LLC.

After the show concluded, on August 26, 2018, DMS's driver traveled to an off-site farm near the horse show and loaded an unrelated horse it was contracted to pick up. The driver, at the same time and place, incorrectly loaded Elton onto the DMS trailer. Four other horses were loaded onto Alexa Lowe, LLC's trailer.

On the same date, the DMS trailer (as it was being pulled by a truck driven by DMS's driver) "was violently rear-ended by Defendant John B. Etheridge on Interstate I-81 in Shenandoah County, Virginia." (*Id.* ¶ 23.) The trailer received substantial physical damage, and Elton was noticeably injured. Elton underwent veterinary treatment for many months to try to make him well. But his injuries, which included neurological damages, required him to be "put down through humane euthanasia in May 2019." (*Id.* ¶ 26.)

The fourth amended complaint names DMS in three counts: (1) Count II, a claim for breach of bailment; (2) Count IV, a claim of "intentional underinsurance"; and (3) Count V, a claim for constructive fraud. (*See generally* 4th Am. Compl.)

DMS was properly served in this case, both with the original complaint and the Fourth Amended Complaint, but it has not appeared, either through counsel or otherwise, nor has it filed any documents in the case. The Clerk entered default against DMS on January 27, 2023, and Alexa Lowe, LLC subsequently moved for default judgment. (Dkt. Nos. 100–102.)

3

## II.  DISCUSSION

### A.  Default Judgment Standard

Rule 55(a) allows entry of default by the clerk, which has already occurred here, and Rule 55(b) governs requests for default judgment.  The court may grant a default judgment against a defendant who has been properly served and "fails 'to plead or otherwise defend' in accordance with the rules."  *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); Fed. R. Civ. P. 55(b)(2).  Pursuant to Rule 55(b)(1), the clerk may enter a default judgment where "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" and, "[i]n all other cases," the rule requires the party to apply to the court for a default judgment.  While the Federal Rules of Civil Procedure encourage disposition of claims on their merits, it is within the trial court's discretion to enter default judgment.  *Moradi*, 673 F.2d at 727 (citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)).

Although the Fourth Circuit has "declin[ed] to address the issue of whether a district court must satisfy itself, *sua sponte*, that it has personal jurisdiction before entering a default judgment," the court nonetheless notes that it has personal jurisdiction over DMS, based on the now-admitted allegations in the complaint.  *Williams v. Advertising Sex, LLC*, 410 F. App'x 578, 580 (4th Cir. 2011); *cf. Homesite Ins. Co. v. Stapleton*, No. 1:14-cv-199, 2014 WL 5107081, at *1 (E.D. Va. Oct. 3, 2014) ("The court must have . . . personal jurisdiction over a defaulting party before it can render default judgment."); *Winzeler v. Sanchez*, No. 2:13CV612, 2015 WL 12645001, at *3 (E.D. Va. July 28, 2015) (stating that the court must have personal jurisdiction over a defaulting party).

The court concludes that facts deemed true by default—DMS's regular transaction of business in the Commonwealth, its contracting with Alexa Lowe, LLC, and the resulting

4

accident in Virginia—are sufficient to confer jurisdiction under Virginia's long-arm statute. *See* Va. Code Ann. 8.01-328.1(A)(1)–(5) (personal jurisdiction exists where, for example, the cause of action arises from the defendant's transaction of business in the Commonwealth or causes tortious injury in Virginia by an act or omission outside the Commonwealth if defendant regularly "does or solicits business in the Commonwealth"). Thus, personal jurisdiction is not a barrier to entry of default judgment.

A party that requests default judgment must show the following: "(1) when and against what party the default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in the military; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2)." *All Am. Ins. Co. v. Morris*, No. 4:11-cv-41, 2011 WL 5330302, at *1 (E.D. Va. Nov. 4, 2011).

As to these five requirements, Alexa Lowe, LLC has shown default was entered against DMS and when, and it has identified the pleading to which default was entered, the Fourth Amended Complaint.[2] DMS is a limited liability company and thus is not an infant, incompetent person, or in military services. Moreover, because DMS has not appeared, Rule 55(b)(2) did not require any notice to be served on DMS. Nonetheless, plaintiff's counsel has certified that a copy of the motion for default judgment was mailed to DMS's registered agent. (Mot. for Default J. 2, Dkt. No. 100.)

In determining whether to grant default judgment, the court treats the well-pleaded factual allegations in the complaint as true and established. *Ryan v. Homecomings Fin. Network*,

---

[2] The Clerk previously entered default against DMS as to a prior version of the complaint. (Dkt. No. 56.) As to the Fourth Amended Complaint, the affidavit of service states that the server was unable to locate and personally serve DMS, but the appropriate papers were mailed to the last known address for DMS by a Clerk in the Office of the Secretary of the Commonwealth, which is proper service. (*See* Dkt. No. 96.)

253 F.3d 778, 780 (4th Cir. 2001) (citations omitted).  The court is obliged, though, to "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. Supp. 2010); *Ryan*, 253 F.3d at 780.  The appropriate inquiry for the court is whether "the face of the pleadings supports the default judgment and the causes of action therein."  *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, No. 99-1508, 1999 WL 598860, at *1 (4th Cir. Aug. 10, 1999)).

**B. The Allegations of the Complaint Support Default Judgment as to the Constructive Fraud Claim.**

Following the foregoing authority—and treating the facts as pled in the complaint as established—the court must determine whether those facts set forth a legitimate cause of action.  Here, because there are three separate claims against DMS and because the damages under any of them would be the same, the court only need determine that one of the causes of action is supported by the facts.  The court concludes that the allegations adequately state a claim of at least constructive fraud, and so the court will not address the bailment and "intentional underinsurance" claims.

Under Virginia law, a claim for constructive fraud requires a showing, by clear and convincing evidence, that "a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the representation," as well as "evidence that [defendant] has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation."  *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E. 2d 316, 321 (Va. 2005) (cleaned up and citations omitted).

The facts here satisfy all of these elements.  Whether innocently or negligently, DMS made statements in its advertising about its superior insurance coverage for equine transport, when it in fact had none.  Thus, "a false representation of a fact was made either innocently or negligently."  That fact was material, as Alexa Lowe, LLC would not have contracted with DMS had it known of DMS's lack of insurance.  Instead, Alexa Lowe, LLC relied on that misrepresentation and suffered economic damages as a result.  Accordingly, the court concludes that the facts establish a claim of constructive fraud.  Thus, a default judgment against DMS is proper.

The court must next determine the amount of the award to Alexa Lowe, LLC.  As set forth in the attached affidavit of Ms. Lowe (Dkt. Nos. 101, 102), the court finds Elton's value, at the time of his death, to be $750,000, which is the replacement value of a horse of similar breeding and training.  Accordingly, the court concludes that DMS shall be liable to Alexa Lowe, LLC for that amount, less a set-off for sums paid by other settling defendants as referenced in Ms. Lowe's affidavit.  The total amount of the judgment against DMS will be $694,975.00.

### III.  CONCLUSION

For the foregoing reasons, the court finds that default judgment against defendant DMS Equine Transport LLC is proper.  By separate order, the court will enter a default judgment and award damages as described herein.

Entered: September 1, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge